IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEVIN MELVIN WEEKS,
    Plaintiff,

v.

ROBERT C. GRADY,
    Defendant.

Civil Action No.
1:18-cv-01373-SDG

**OPINION AND ORDER**

This matter is before the Court on the Final Report and Recommendation (the R&R) of United States Magistrate Judge John K. Larkins, III [ECF 78], which recommends that Defendant Robert C. Grady's motion for summary judgment [ECF 65] be denied. After careful review of the record and Grady's objections [ECF 80], the Court **OVERRULES** the objections, **ADOPTS** the R&R in its entirety as the Order of this Court, and **DENIES** Grady's motion for summary judgment.

**I.  Background**

Plaintiff Kevin Melvin Weeks, proceeding *pro se*, filed this civil rights suit pursuant to 42 U.S.C. § 1983, alleging that Grady violated his constitutional rights by subjecting him and five other inmates to an unreasonable body cavity search in a group setting at the Fulton County Jail, in the presence of three other guards, for

Grady's own sexual gratification.[1] Grady moved for summary judgment, arguing that Weeks failed to demonstrate a violation of his constitutional rights and that Grady is entitled to qualified immunity.[2] Judge Larkins found that Weeks raised genuine issues of material fact and recommended that the Court deny Grady's motion for summary judgment.[3] Grady filed objections.[4]

## II.     Legal Standard

A party challenging a report and recommendation issued by a United States Magistrate Judge must file written objections that specifically identify the portions of the proposed findings and recommendations to which an objection is made and must assert a specific basis for the objection. *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009). The district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).

---

[1]   *See generally*, ECF 12.

[2]   ECF 65-1.

[3]   *Id.* at 26.

[4]   ECF 80.

The Court has broad discretion in reviewing a magistrate judge's report and recommendation. In addressing objections, it may consider an argument that was never presented to the magistrate judge, and it may also decline to consider a party's argument that was not first presented to the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1290–92 (11th Cir. 2009). Absent objection, the Court need only satisfy itself that there is no clear error on the face of the record. Fed. R. Civ. P. 72(b), advisory committee's note to the 1983 amendment.

## III. Discussion

Grady objects to the R&R on five grounds. First, he objects to Judge Larkins's reliance on the opinions of Fulton County Deputies Jones and Jackson and the findings of a Prison Rape Elimination Act (PREA) investigation.[5] Second, Grady objects to Judge Larkins's conclusion that Grady was not entitled to qualified immunity.[6] Third, Grady contends that Judge Larkins erroneously found that another inmate, Moody, was transported separately.[7] Fourth, Grady objects to Judge Larkins's consideration of law from other circuits in determining that there

---

[5]   ECF 80, at 2–4.

[6]   *Id.* at 4–6.

[7]   *Id.* at 6–7.

was a violation of a clearly established constitutional right.[8] Finally, Grady argues that Judge Larkins erred in denying summary judgment on Weeks's state law claims.[9]

### A. Judge Larkins Properly Considered the PREA Investigation Report and the Statements of Deputies Jones and Jackson.

Grady argues that Judge Larkins erred by considering the opinions of Deputies Jones and Jackson, who were present during the search,[10] along with the findings of a PREA investigation, which concluded that Grady engaged in staff sexual misconduct.[11] Grady asserts that the opinions of Jones and Jackson and the PREA findings are irrelevant to the question of whether a reasonable officer faced with the same facts would know that the search was unlawful.[12] He further contends that, in considering this evidence, Judge Larkins devolved the reasonable officer analysis into "counting heads."[13] The Court disagrees with Grady's arguments and his characterization of Judge Larkins's findings.

---

[8]   *Id.* at 7–9.

[9]   *Id.* at 9–13.

[10]  ECF 78, at 10.

[11]  *Id.* at 11.

[12]  *Id.* at 3–4.

[13]  *Id.* at 4.

In determining whether a strip search violates a prisoner's right to bodily privacy on the ground that it is unreasonable or abusive, the Court considers "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *see also Powell v. Barrett*, 541 F.3d 1298, 1305 (11th Cir. 2008). Where, as here, the officer asserts a qualified immunity defense, a plaintiff must also show that any objectively reasonable officer would be on notice that the act was clearly unlawful. *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022). To succeed on his Fourth Amendment claim, Weeks must therefore show that the search was unreasonable or abusive and that a reasonable officer in Grady's position would have been on notice that the search was unlawful.

Judge Larkins properly considered the PREA investigation report and the statements of Deputies Jones and Jackson in evaluating Weeks's Fourth Amendment claim.[14] *United States v. Umbach*, 708 F. App'x 533, 545 (11th Cir. 2017) (officer could give lay opinion testimony on justification for use of force where opinion was (1) relevant to determination of fact, (2) rationally based on officer's perception, and (3) rationally based on officer's "experience on police force").

---

14   *Id.* at 18.

Specifically, it was not error to consider the deputies' statements and the PREA report as relevant to the circumstances of the search, including that the inmates had already been subjected to individualized body cavity searches, that the second search happened in a group setting, and that Grady made a sound that was perceived to be sexual in nature during the second search.[15] After finding that a reasonable jury could determine that the second search was unreasonable, Judge Larkins turned to whether a reasonable officer would know that an unreasonable or abusive search was proscribed by clearly established law.[16]

The Court also disagrees that Judge Larkins's analysis was merely "counting heads" to determine reasonableness. His analysis focused on Grady's purported justification for the search and how a jury could find the justification was false.[17] Grady's articulated justification was that officers suspected that another inmate, Moody, had contraband because they smelled smoke coming from his cell, and Moody had been transported to the jail with other inmates, including Weeks.[18] Judge Larkins reasoned that a jury could find that Moody was

---

15   *Id.* at 10 n.9.

16   *Id.* at 22–26.

17   *Id.* at 18.

18   *Id.* at 7.

in fact transported separately and, accordingly, that the search was unjustified and unreasonable, particularly because each inmate underwent individualized body cavity searches when they arrived at the jail.[19] The Court finds no error in that assessment for summary judgment purposes. Given these disputes of material fact,[20] the question of the reasonableness of the search must go to a jury. Grady's objection is overruled.

> **B.   Judge Larkins Properly Found That a Question of Material Fact Existed as to Whether Moody Was Transported Separately.**

Grady asserts that Judge Larkins erroneously determined that Moody was transported separately from the other inmates.[21] Grady argues that Judge Larkins improperly considered a Georgia Department of Corrections operating procedure about how death penalty inmates, like Moody, are transported, even though Weeks did not produce the operating procedure as evidence.[22] According to Grady, without evidence of the actual procedure, Weeks had no affirmative evidence to establish that Moody was transported separately. The Court disagrees that Weeks was required to produce the actual policy to defeat Grady's motion.

---

[19]   *Id.* at 18.

[20]   *Id.* at 4 nn.4, 6.

[21]   ECF 80, at 6–7.

[22]   *Id.*

The Court need not shy away from the obvious. Weeks is appearing *pro se* and is litigating this case while incarcerated. He therefore faces hurdles that most litigants, including many *pro se* litigants, do not have to overcome. One of these is ready access to evidence. In light of these circumstances, the Court may construe his filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As Judge Larkins noted,[23] it is disingenuous for Grady to use Weeks's limitations against him and to fault him for not requesting Court assistance in obtaining one particular document.[24] Weeks's *pro se* status does not, however, relieve him of "the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

Contrary to Grady's argument, Weeks did come forward with affirmative evidence in support of his position that Moody was transported separately. He filed the table of contents of a standard operating procedure for the Georgia Department of Corrections, which lists a section on "Management of Offenders Under Death Sentence."[25] The table of contents specifically states that this

---

[23]   ECF 78, at 5 n.6.

[24]   ECF 80, at 6.

[25]   ECF 73-3, at 100–01.

information is exempt from the Georgia Open Records Act and would be considered contraband in the possession of inmates.[26] Because of these limitations, Judge Larkins found that Weeks could cite the table of contents as support.[27] The table of contents reflects that death row inmates were handled differently from other inmates, and Weeks's understanding was that this policy included separate transport.[28] It was not error to credit the table of contents as evidence of the policy.

Grady also overstates Judge Larkins's reliance on the written procedure. Along with the table of contents, Judge Larkins emphasized Weeks's own attestation that Moody was transferred separately,[29] and found that Grady's statement that Weeks and Moody were transported together following court appearances contradicted the other record evidence.[30] This affirmative evidence is sufficient to satisfy Weeks's burden to show a dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (under Rule 56(e), nonmoving party may rely on her own affidavit to show that there is a genuine issue for trial). Notably, the undisputed evidence also shows that Moody was separated from the other

---

[26] *Id.*

[27] ECF 78, at 5 n.6.

[28] ECF 73-4, ¶ 3.

[29] ECF 78, at 5 n.6.

[30] *Id.* at 6.

inmates and treated differently when they arrived at the Fulton County Jail, which supports Weeks' position.[31] Judge Larkins's conclusion that there was evidence to support that Moody was transported separately was neither improper nor erroneous and Grady's objection is overruled.

### C. Judge Larkins Properly Found that Questions of Material Fact Precluded Summary Judgment on Qualified Immunity Grounds.

Grady also objects to Judge Larkins's conclusion that there was a question of material fact as to whether there was a fact-based, penological reason for ordering a second search.[32] Grady cites several facts that Judge Larkins considered, including that Moody arrived from the same location as the other inmates, that an officer smelled smoke coming from Moody's cell, that Grady determined that the other officers failed to properly search all the inmates, and that he only ordered a search of inmates who arrived at the same time and from the same place as Moody,[33] and argues these facts demonstrate a penological justification.

Grady's objection ignores the additional and contradictory evidence in the record that led Judge Larkins to conclude that Weeks had shown a material dispute of fact. First, there was evidence that Grady's recollection of how he

---

[31] *Id.* at 7–8.

[32] ECF 80, at 5.

[33] *Id.* at 4–5.

learned of Moody's cell smelling like smoke contradicted other evidence in the record. Judge Larkins therefore assumed for summary judgment purposes that Moody and the other inmates were not transferred together.[34] Consistent with that standard of review and construing the facts in Weeks's favor, Judge Larkins concluded that a jury could find that Grady's justification was based on a false premise. And, even if the facts cited by Grady show a penological reason for conducting the search, Judge Larkins also found that questions of fact remained as to whether the way in which the second search was conducted was unreasonable or exaggerated, which go beyond the penological justification to conduct the search.[35] Judge Larkins did not err by recommending denial of summary judgment on qualified immunity grounds even though he construed certain facts that support Grady's version of events.

> D. **Judge Larkins Did Not Improperly Consider Law from Other Circuits in Determining Whether the Purported Constitutional Violation Was Clearly Established.**

Grady objects to Judge Larkins's legal analysis on qualified immunity, arguing that he improperly considered case law from other judicial circuits.[36]

---

[34] ECF 75, at 17–18.

[35] *Id.* at 18, 21–22.

[36] ECF 80, at 7–9.

Grady also argues, more generally, that there is no case law in this circuit that would put Grady on notice that it was clearly illegal to conduct the second search.³⁷ Both arguments fail.

To overcome Grady's qualified immunity defense, Weeks must show not only that Grady violated one or more of his constitutional rights, "but also that it was clearly established at the time that those specific actions did so." *Powell*, 25 F.4th at 920 (citing *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012)). This requirement can be met by: (1) "pointing to a materially similar decision of the Supreme Court, of [the Eleventh Circuit], or of the supreme court of the state in which the case arose;" (2) establishing a broader, clearly established principle of law that controls the novel facts of the case; or (3) showing that the conduct was so obviously unconstitutional that prior case law is unnecessary. *Id.* Finding no materially similar case, Judge Larkins relied on the second method.³⁸

Grady is wrong that Judge Larkins relied on non-binding authority in determining that clearly established, broad legal principles control here. Judge Larkins found that "Eleventh Circuit and Georgia law in 2016," the year of the

---

37  *Id.*

38  ECF 78, at 24–25.

group search, "provided that a prisoner retains a right to bodily privacy,"[39] and discussed *Fortner v. Thomas*, 983 F.2d 1024 (11th Cir. 1993), *Padgett v. Donald*, 401 F.3d 1273 (11th Cir. 2005), and *Zant v. Prevatte*, 248 Ga. 832 (1982). Though Judge Larkins also cited Sixth and Tenth Circuit precedent for comparison,[40] and case law from other circuits in defining the reasonableness of the search,[41] he limited his consideration to Eleventh Circuit and Georgia case law in defining the broad legal principles that govern.[42]

Nor was Judge Larkins incorrect in finding that broad legal principles control the facts of this case. The Eleventh Circuit has recognized that the precedent in this circuit "clearly establish[es] the principle that, absent a legitimate reason, individuals maintain a right to bodily privacy, in particular the right not to have their genitals exposed to onlookers." *Mitchell v. Stewart*, 608 F. App'x 730, 735 (11th Cir. 2015) (citing *Fortner*, 982 F.2d at 1030 and *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006), *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010)). Indeed, in *Fortner*, the Eleventh Circuit declined to define the

---

[39] *Id.* at 24.

[40] *Id.* at 26.

[41] *Id.* at 19–22.

[42] *Id.* at 24–25.

parameters of a prisoner's constitutional right to privacy and, instead, adopted a case-by-case approach with the understanding that "prisoners retain a constitutional right to bodily privacy." *Fortner*, 982 F.2d at 1030. Applying the broad principle that prisoners have a right to bodily privacy on a case-by-case is, therefore, not just acceptable, but appropriate in these circumstances.

Grady distinguishes this case from *Fortner* and *Padgett*, arguing that the Eleventh Circuit has not held that group searches violate an inmate's right to bodily privacy.[43] But relying on a broad, clearly established principle does not require that the relevant case law be materially similar. *Mitchell*, 608 F. App'x at 735. Applying the right defined in *Fortner*, "it was clearly established at the time of the incident in question that [Weeks] had a broad constitutional right to bodily privacy, and that in the light most favorable to [Weeks], a reasonable jury could find that the Defendants violated that right." *Mitchell*, 608 F. App'x at 735. *Powell v. Barrett*, cited by Grady in support of his position that nude group searches are reasonable, is distinguishable. 541 F.3d 1298 (11th Cir. 2008). The Eleventh Circuit found it reasonable to require inmates of the same sex to shower together and for guards to watch them to prevent misconduct. *Id.* at 1313 n.1. Here, by contrast, the

---

43   ECF 80, at 8–9.

search went beyond mere observation. Weeks alleges that Grady made a sound indicating that he (Grady) was aroused by the search, and the evidence creates a dispute of material fact concerning whether there was any justification, like preventing misconduct, for the additional search. Grady's objection is overruled.

### E. Grady Failed to Argue That His State Law Claims Should Be Dismissed in His Motion for Summary Judgment.

Grady objects to Judge Larkins's recommendation that the Court deny summary judgment because such a ruling allows Weeks's state law claims to proceed to trial.[44] Grady argues that Georgia law on official immunity bars suit against state officers unless the plaintiff presents evidence of actual malice, which is absent here.[45] In his motion for summary judgment, however, Grady did not argue that he is entitled to official immunity under Georgia law or that Weeks failed to show actual malice. Judge Larkins, therefore, did not consider these arguments. The Court declines to do so now because they were not presented to Judge Larkins in the first instance. *McNeil*, 557 F.3d at 1292 (district court may decline to consider argument not first presented to the magistrate judge but raised for the first time in objections). Grady's objection is overruled.

---

[44]  *Id.* at 9–10.

[45]  *Id.* at 11.

**IV.   Conclusion**

Grady's objections [ECF 80] are **OVERRULED**. The Court **ADOPTS** the R&R [ECF 78] in its entirety as the Order of this Court. Grady's motion for summary judgment [ECF 65] is **DENIED**.

Within fourteen days of entry of this Order, Weeks is **DIRECTED** to file a letter informing the Court whether he wishes to have counsel appointed for him for the remainder of this case.

**SO ORDERED** this 8th day of July, 2022.

Steven D. Grimberg
United States District Court Judge